## Elmer D. Wilt *v.* The Reed Electric Company, Appellant.

*Receivers—Attachment for contempt—Appeal—Practice, Supreme Court.*

On appeal from decree making absolute a rule to show cause why an attachment should not issue for contempt in refusing to turn over property to a receiver, only such facts as are undisputed can be considered.

*Receivers—Possession—Secret process—Attachment for contempt.*

An inventor assigned patents to a corporation, and agreed to work and carry on for the corporation a secret process necessary in its business. It was agreed between the parties that the process should be reduced to writing and sealed and deposited in a bank, the paper to be opened only on the happening of certain contingencies; and that the inventor should occupy, without the presence of other parties, the place where the secret process was to be carried on, and that in case of default in payment of royalties the secret process and all the chemicals, machinery and apparatus used in the process should revert to the inventor. The corporation became embarrassed, defaulted in the payment of royalties, and went into the hands of a receiver. The inventor refused to permit the receiver to have access to or possession of a portion of the company's building where the secret process was worked until he could remove his property therefrom, on the ground that if access were given the secret process would be revealed. The court directed that an attachment should issue against the inventor unless he gave up possession of the entire building to the receiver. In the order the court further directed that the receiver should not permit any one to examine the property connected with the secret process, and that he should not disclose any information which he himself might obtain in reference to the process. *Held*, (1) that the decree was erroneous inasmuch as it gave no adequate protection to the owner of the secret process; .(2) that the owner of the process was entitled to a reasonable time, not less than thirty days, within which to remove his property from the building.

*Practice, common pleas—Appeals—Findings of fact and law—Attachment proceedings.*

In disposing of an interlocutory question such as the right to an attachment to compel the delivery of property to a receiver, there should always appear of record a finding of the facts, together with the conclusions drawn therefrom by the court below, in order to enable the Supreme Court to properly review, and dispose of the case on appeal.

Argued Jan. 26, 1898. Appeal, No. 375, Jan. T., 1895, by defendant, from order of C. P. No. 3, Phila. Co., March T., 1897, No. 1176, making absolute a rule for attachment. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Rule for attachment for disobeying an injunction. Before McMICHAEL, J.

The facts and the decree appear by the opinion of the Supreme Court.

*Error assigned* was the alternative decree entered by the trial court.

*James W. Laws* and *John G. Johnson*, for appellant.—The receiver gets only such title as the defendant or judgment debtor has to the estate of which he takes possession: 20 Am. & Eng. Ency. of Law, 30 ; Gere v. Dibble, 17 How. Pr. (N. Y.) 31; In re North American Gutta Percha Co., 17 How. Prac. (N. Y.) 549; Rich v. Loutrel, 18 How. Prac. (N. Y.) 121.

If, at the time a receiver is appointed, a party claiming a right in the same subject-matter, under a title paramount to that under which the receiver is appointed, is in possession of the right which he claims, the appointment of the receiver leaves him in possession of the right, and does not interfere with the exercise of it: Kerr on Receivers (2d ed.), p. 169; Evelyn v. Lewis, 3 Hare, 472; Johnes v. Claughton, Jacob, 573, Rodman v. Henry, 17 N. Y. 482; Brown v. Gilmore, 16 How. Prac. 527; Parker v. Browning, 8 Paige (N. Y.), 388.

When property in possession of a third person is claimed by the receiver, the claimant must make such person a party by amending the bill, or the receiver must proceed against him by suit in the ordinary way: Story's Equity Juris. sec. 833 *b*; Noe v. Gibson, 7 Paige (N. Y.), 513; Yeager v. Wallace, 44 Pa. 296.

A receiver has no legal title to the assets which he is appointed to collect, and without authority from the court he cannot maintain trover where they have been wrongfully converted previously to his possession: Singerly v. Fox, 75 Pa. 114; Yeager v. Wallace, 44 Pa. 294; Albany City Bank v. Schermerhorn, 9 Paige (N. Y.), 372.

*E. O. Michener*, for appellee.—The possession of the appellant was, (*a*) either the possession of the company itself, because of his relationship to the company, or (*b*) a possession arising by virtue of the alleged forfeiture of the company's rights, by reason of its breach of agreement.

If his possession was that of the company, then clearly delivery to the receiver should be enforced by attachment. If his claim is by virtue of the forfeiture, equity will not permit him to allege the forfeiture as the basis of the title, and will hold that the title has not changed from the title which existed in the company before he attempted to enforce the forfeiture; in which event, delivery of possession is properly enforced by proceedings for an attachment. This seems to be so thoroughly settled by the authorities quoted by appellant that we are satisfied to leave the case to the determination of the court, upon the law as settled by the decisions.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 17, 1898:

The attachment proceedings brought here for review were instituted for the purpose of enforcing a special injunction intended to secure to the receiver full and entire possession of the defendant corporation's property specified in the decree recited in the assignment of error.

Inasmuch as the decree is merely interlocutory, our consideration of the case at this time should be restricted to the undisputed facts relating to the subject-matter of the decree. To that end, a brief reference to some of the provisions of the contract is necessary. By the modified contract of October 12, 1896, the appellant, Charles J. Reed, undertook to assign to the defendant company two patents, one for an improvement in storage batteries, the other for an improvement in storage battery electrodes, together with all other patents and processes thereafter invented or discovered by him. Among other provisions it contains the following:

"Second. Whereas it is necessary and required that a certain process of forming the electrodes or battery plates, using and operating said patents shall be worked secretly, it is mutually agreed that the said secret process shall be worked and carried on entirely under the direction and supervision of the said Charles J. Reed, for the said Reed Electric Company. It is further agreed that Gustav Stahl, Marcellus T. Morrill and Charles J. Reed . . . . shall be constituted trustees for both parties hereto; and the said Charles J. Reed shall execute and deliver a written description, fully explaining the said secret process in such manner that any other person learned in the art shall be able to utilize the same in conjunction with the publicly described portion of the said invention as contained in the letters patent. The said written description shall be sealed in the presence of all the said trustees and deposited with the Tradesman's National Bank of Philadelphia, or such other depository as the trustees may agree upon, and after being so deposited shall be opened only in the presence of and by consent of all three of the above named trustees, except as hereinafter provided.

"Third. In the event of the death of said Charles J. Reed or his permanent disability or refusal under the terms of this agreement to superintend and direct the operation of the said process for the sole and exclusive benefit of the said Reed Electric Company as required, then, and in such case, it may and shall be allowed the other trustees jointly to examine and become familiar with the said secret process and to do all things necessary for the continued use and operation of the said process and patents above referred to. In the event of the death of any of the above named trustees, the vacancy shall be filled by the other two, but no person shall be a trustee who is not a stockholder in the Reed Electric Company.

"Fourth. It is also agreed by the parties hereto that no person except the said Charles J. Reed shall have possession or knowledge of the said secret process as described in the above named sealed paper, or have access, without the consent of the said Charles J. Reed, to any place where said process shall be carried on, except as hereinbefore provided."

"Sixth. It is further agreed that if at any time the party of the first part (defendant) for any reason whatever fails to com-

ply with any of the conditions of this agreement, or if the roy-
alty of the party of the second part (appellant) shall at any
time, without his consent, be in arrears for more than six weeks,
then and in that event, all rights, patents, processes and inven-
tions, the sealed paper herein described and all chemicals, ma-
chinery and apparatus in use in working any secret process,
except the two patents mentioned above, shall immediately re-
vert to the said party of the second part, the same as if this
agreement had never been made, and he may take possession
of the same immediately."

In the decree appointing the receiver and granting the pre-
liminary injunction, the receiver was ordered to take, and the
corporation defendant, its officers and agents were ordered to
deliver to him possession of all the assets and property, real
and personal, of any sort and kind belonging to said corpora-
tion.   The affidavit on which the rule for attachment is based
recites the decree, the possession of the appellant Reed, as a
stockholder and general manager of the corporation, and his
refusal, on demand, to deliver possession to the receiver, which
demand was accompanied with a copy of the injunction, duly
served on appellant Reed, on June 11, 1897.

Appellant's answer to the rule, contains, inter alia, the fol-
lowing averments : " This deponent denies that he, as a stock-
holder or general manager of the Reed Electric Company, has
taken possession of the factory building on the southeast side
of Waterloo street . . . . in the city of Philadelphia, in which
said company has carried on its business, and also denies that
he has, individually, or as a stockholder or as a general manager,
taken possession of any machinery, tools and appliances belong-
ing to said company.   On the contrary, deponent alleges that
upon June 4, 1897, he voluntarily turned over to the receiver
all the books and papers of the Reed Electric Company which
were in his possession, and delivered to the receiver the keys
and combination of the company's safe ; that he voluntarily
gave to the receiver access to the company's building, with the
exception of certain secret chambers therein, which contain de-
ponent's private property, and informed the receiver that there
was in said chambers and scattered generally throughout the
building, certain property used in working a certain secret proc-
ess for making electric storage batteries and storage battery

plates which belonged absolutely to deponent (under section sixth of the above recited agreement) which property, on notice to the receiver, it was deponent's intention to remove; that when this was done, deponent would surrender possession of the building to the receiver. Thereupon the receiver warned the deponent not to remove any of said property from the buildings, and demanded that deponent should then and there deliver to him the keys to the building and the possession of its contents.

" He further alleges that the said factory building which contains the apparatus for working said secret process, is a building specially constructed for the purpose of carrying on such process in absolute secrecy, so long as deponent can exclude every one but himself from the building. That any one who obtains an entrance to said building could, if they so desired, . . . . readily open and obtain entrance to the chambers where said apparatus now is, and discover the secret process by which said batteries are made, to the irreparable damage of deponent. That once said secret process is discovered by any one else, they could operate the same in secret and produce batteries similar to those produced by deponent, who would be powerless to prevent them from doing so."

On hearing and consideration of the rule, the following alternative decree was entered by the court: " That an attachment issue forthwith against the said Charles J. Reed, as prayed for, unless he, the said Charles J. Reed, shall forthwith deliver to Frank R. Shattuck, receiver of the defendant company, full and entire possession of the factory building belonging to the defendant company, situate on Waterloo street, . . . . and fully described in the bill of complaint filed in this case, with the appurtenances, and together with all the machinery and personal property therein contained, and which was in the possession, custody and control of said Charles J. Reed, and contained in said building, excepting such articles of personal property as were claimed by the said Charles J. Reed to be his exclusive property, by reason of the fact that they were manufactured and paid for with his own funds, and excepting the formula for the alleged secret process of manufacturing battery plates on deposit in The Tradesman's National Bank."

And the court further ordered and directed " that the said

receiver, when in possession of said personal property, shall not permit any examination or inspections of the same by any one, or give any information of or respecting the same, and further that any information which he, the said receiver, may obtain in reference to said secret process by virtue of his office as receiver shall not be disclosed by him to any one at any time."

The record has thus been quoted at considerable length for the purpose of showing the character of the controversy, and the nature of the rights for which protection is claimed under the contract of the parties. The title to the property involved in this contention depends on mixed questions of law and facts, some of which facts were disputed and remain undetermined. It would therefore be improper for us, at this stage of the case, to enter upon the discussion of disputed questions of fact, with the view of determining them. That should be done by the court below in the regular and orderly way. It is sufficient to say that appellant's rights appear to be guarded by carefully drawn and elaborate provisions in the agreement of the parties from which we have quoted. While the court appears to have recognized appellant's right to some protection under the terms of the agreement, its decree requiring that he "shall forthwith deliver to" the receiver full and exclusive possession of the factory building, etc., is not only inadequate, but it practically ignores his right to anything like substantial protection. He claimed that access to the building would give access to the chambers where the secret process was operated, and that this would lead to the discovery of the process. This claim is fully recognized in the fourth paragraph of the agreement, is not successfully controverted, and should have been protected by the decree. It is wholly insufficient that the receiver, and he alone, should be required not to disclose the secret which the immediate possession of the entire building would divulge. He was not even entitled to know what it was. The very least measure of protection to which appellant was entitled was the privilege of removing within a reasonable time, not less than thirty days, under his own supervision, such articles, machinery, etc., as he had a right to remove therefrom. In view of the peculiar nature of the property and explicit terms of the agreement, he was entitled to retain possession long enough to so remove his property.

In addition to that, the rights of both parties, if need be, may be amply protected by requiring proper security pending the final determination of contested rights.

In disposing of important interlocutory questions, such as this, there should always appear of record a finding of the facts, together with the conclusions drawn therefrom by the court below. Without this it is sometimes difficult, if not impossible, to review and properly dispose of such cases on appeal to this Court.

The decree is reversed and set aside at plaintiff's costs, and it is ordered that the record be remitted to the court below with instructions to proceed, after due notice to the parties, and enter a decree in accordance with the suggestions contained in this opinion, and in so doing, if further testimony is deemed necessary, it should be taken.